UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**AMALGAMATED TRANSIT UNION**,                Civil Case No. 3:13-CV-01418-KI
**LOCAL 757**, a labor organization,

            Plaintiff,                OPINION AND ORDER

               v.

**FIRST STUDENT, INC.**, a Delaware
corporation,

            Defendant.


      Henry J. Kaplan
      Bennett, Hartman, Morris & Kaplan, LLP
      210 SW Morrison Street, Suite 500
      Portland, Oregon  97204-3149

            Attorney for Plaintiff


Page 1 - OPINION AND ORDER

Douglas S. Parker
Littler Mendelson, P.C.
121 SW Morrison, Suite 900
Portland, Oregon  97204

      Attorney for Defendant

KING, Judge:

Plaintiff Amalgamated Transit Union, Local 757 ("Union") brought this action against First Student, Inc. ("Company") to confirm two awards from arbitrations in which the Union prevailed.  One award concerned 2011 changes in medical coverage in Corvallis and the other concerned the termination of Union member Michael Hager.  Before the court is First Student's Application to Vacate Decision and Arbitration Award [10], which seeks to vacate only the Hager arbitration under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. As explained below, I deny the motion and do not vacate the award.

## FACTS

The Company terminated Union member Hager in October 2008 because a background check revealed his criminal conviction.  Hager filed a grievance the same day asserting the Company did not have just cause to terminate him.  The Company denied the grievance at all pre-arbitration steps. The parties obtained a panel of arbitrators but failed to select one within 15 days of demanding arbitration.  Instead, the parties did not select an arbitrator until June 2012, nearly four years later.

Meanwhile, a class action was filed against the Company in 2010 alleging violations of the Fair Credit Reporting Act ("FCRA") for taking adverse action against a class of employees and employment applicants based on consumer reports without first providing the person a copy

Page 2 - OPINION AND ORDER

of the consumer report and a summary of FCRA rights.  Joshaway v. First Student, Inc.,

No. 10CV7002 (N.D. Ill.) ("Class Action").  The court approved a settlement agreement in

September 2011 which contained a release of rights.  Hager did not opt-out of the class and,

according to the arbitrator, did not receive notice of the Class Action because he was homeless at

the time.

The Union prevailed in Hager's arbitration held in April 2013.  The arbitrator made

findings on three issues ("Award"):

1.      The Class Action settlement in the lawsuit alleging the Company violated the

FCRA did not preclude the grievance.

2.      Because the parties mutually agreed on the arbitrator in a way consistent with the

manner in which the parties have interpreted and applied the terms of the contract, the delayed

selection of the arbitrator does not preclude the Union from bringing the grievance.

3.      Hager was not terminated for just cause.  The arbitrator awarded back pay from

the date of discharge in 2008 through the date of the arbitration in 2013.

**DISCUSSION**

I.      Scope of the Arbitrator's Authority

The Company contends the Award should be vacated for failing to draw its essence from

the collective bargaining agreement ("CBA") because the arbitrator exceeded his powers by

ignoring the CBA's requirement that the parties select an arbitrator within 15 working days after

receiving the panel.  The Company argues the CBA did not allow the arbitrator to ignore its

procedural deadlines because those deadlines concern the arbitrator's jurisdiction over the merits

of the case and are not merely procedural questions.  The Company further contends the

arbitrator did not have the right to take testimony on past practice because the 15-day rule is unambiguous.  In summary, the Company acknowledges an arbitrator has broad authority to interpret contract language but cannot ignore contract language or replace it with evidence of past practice.

The Union claims the arbitrator did not err by receiving uncontroverted evidence that the uniform past practice of the parties was to select an arbitrator at a time convenient to the parties, and that both parties had regularly availed themselves of this practice and the resulting delay past the 15-day deadline in the CBA.  The Union also notes the uncontroverted evidence that both sides move cases forward to arbitration, and it argues the Company could have done so here if concerned about the delay.  The Union points out the CBA obligates neither party to move the matter forward; thus, the Union contends neither party failed to take a contractually-required action, and the CBA language on this issue is ambiguous.  In summary, the Union contends the arbitrator's factual findings and contract interpretation are well-grounded in the evidence of past practice and the contract language.

The CBA states:

(b) The specific steps provided for throughout this article, as well as the time limits for each, are intended by the parties to be followed strictly in all cases, except where the parties shall agree in writing to delete or to add steps or to extend specific time limits.  Any failure by the Company to respond within the time limit provided for each step shall have the same result as that of a timely negative response in that the grievance may be pursued to the next step.  Any failure by the grievant or the Union to comply with the specific steps and time limits shall result in the grievance being barred for all purposes.

. . . .

(a) The arbitrator shall be appointed by the Company and Union by whatever means both agree to or from a panel of arbitrators requested from the

Federal Mediation and Conciliation Service. If a panel is obtained from the
Federal Mediation and Conciliation Service, selection shall be made within fifteen
(15) working days of receipt of said list, with the order of striking being
determined by lot.

      The arbitrator shall have no authority to:

         (1) Add to, delete from, amend or in any way disregard any of the
terms of this Agreement;

      . . . .

         (4) Accept for submission or render an award in a grievance in
which the specific procedures of this article, including the express time limits at
each step, have not been adhered to;

Parker Decl. Ex. C, at 13-14 (selected portions of Article X).

Federal labor law is tipped in favor of arbitration.  "It is well-settled that federal labor

policy favors the resolution of disputes through arbitration; thus, judicial scrutiny of an

arbitrator's decision is *extremely* limited."  <u>S. California Gas Co. v. Util. Workers Union of Am.</u>,

265 F.3d 787, 792 (9th Cir. 2001).

If an "'arbitrator is even arguably construing or applying the contract and acting
within the scope of his authority,' the fact that 'a court is convinced he committed
serious error does not suffice to overturn his decision.'" <u>E. Associated Coal Corp.
v. Mine Workers</u>, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000)
(quoting <u>Misco</u>, 484 U.S. at 38, 108 S. Ct. 364).  Only where the arbitrator ignores
the contract's plain language, choosing instead to dispense his own brand of
industrial justice, may we question his judgment.

<u>Id.</u>

Although courts give an arbitrator's award a "nearly unparalleled degree of deference[,]"

one narrow exception allows the court to vacate an award under Section 301 "when the award

does not draw its essence from the collective bargaining agreement and the arbitrator is

dispensing his own brand of industrial justice[.]"  <u>Id.</u>  To draw its essence from the CBA, an

arbitration award must be a plausible interpretation of the CBA but need not be the only

interpretation.  Ass'n of W. Pulp & Paper Workers, Local 78 v. Rexam, 221 F.3d 1085, 1090-91

(9th Cir. 2000).  Industrial common law–the practices of the industry and shop–are an equal part

of the CBA even though not expressed within it.  Id. at 1091.  An award draws its essence from

the CBA when based on language in the CBA.  SFIC Properties, Inc. v. Int'l Ass'n of Machinists

& Aerospace Workers, 103 F.3d 923, 925 (9th Cir. 1996).

   The CBA's 15-day period to select an arbitrator from the panel is unusual in that it does

not put the onus on either side to start the selection process.  Under the Company's theory, the

grievant is the only one to suffer a consequence, however, if neither side moves forward to start

the arbitration selection process before the deadline.

   I see no error in the arbitrator taking testimony on past practice concerning the deadline,

even if the term is unambiguous, because the deadline is procedural.  The Company relies on

Anheuser-Busch, Inc. v. Beer Workers, Local Union No. 744, 280 F.3d 1133, 1138-40 (7th Cir.

2002), for its vacation of an arbitration award because the arbitrator relied on past practice to

modify unambiguous language in the CBA concerning commission rates.  The 15-day deadline,

however, is a procedural issue, rather than a substantive term of the CBA.  Toyota of Berkeley v.

Auto. Salesman's Union, Local 1095, 834 F.2d 751, 754 (9th Cir. 1987) (timeliness of grievance

and arbitration demand was procedural question for the arbitrator to resolve), amended on other

grounds by 856 F.2d 1572 (1988).  Determining the past practice of these two parties,

particularly on a procedural issue, allows the arbitrator to identify an implied term of the CBA.

In this case, the evidence was uncontroverted that the parties often ignored the deadline.  The

arbitrator then turned to an express term of the CBA allowing the arbitrator to be appointed by

whatever means both the Company and the Union agree to.  The arbitrator concluded the parties

agreed to delay the selection and, when convenient for both, to select from a stale list.  The

arbitrator's reasoning, as well as his conclusion that the delay did not preclude the arbitration, is

based on language in the CBA and is a plausible interpretation of it.  Accordingly, the Award

draws its essence from the CBA and does not fall within the exception which would allow me to

vacate the Award.

II.      Effect of the Class Action Settlement

Because Hager did not opt out of the Class Action, the Company argues he is bound by

the class settlement and waived his right to arbitrate his grievance.  According to the Company,

the facts in the arbitration "reasonably arise" out of the underlying facts in the Class Action; thus,

the release covers the claim in the grievance.

The Union disagrees, arguing the grievance did not arise out of the facts alleged in the

Class Action, which the Union argues only concerned the procurement of consumer credit reports

without proper notice as required by the FCRA.  The Union explains the grievance concerned

whether the Company had just cause to fire Hager due to his criminal conviction, something the

Company could have learned of through lawful means.

In the class action's settlement agreement, members of the class release the Company

> from any and all claims, debts, penalties, liabilities, demands, obligations,
> guarantees, costs, expenses, attorneys' fees, damages, actions or causes of action
> of whatever kind or nature, whether known or unknown, that were alleged or that
> reasonably arise out of the facts alleged in the Actions, for the time period
> October 5, 2007 through and including August 10, 2010.

Parker Decl. Ex. B, at 21.

A federal court may release claims alleged in a class action as well as claims "based on the identical factual predicate as that underlying the claims in the settled class action." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 748 (9th Cir. 2006) (class settlement extinguished plaintiff's claims alleging a different theory of anti-competitive conduct because the allegations of price-fixing the debit or credit card interchange rates and the underlying injury were identical in both cases). The identical factual predicate test only stretches a release so far. See Hesse v. Sprint Corp., 598 F.3d 581, 591 (9th Cir. 2010) (settlement in class action concerning nationwide surcharges to recoup the costs of compliance with federal programs did not bar claim concerning statewide surcharge to recoup a Washington state tax in violation of a Washington statute); Dosier v. Miami Valley Broad. Corp., 656 F.2d 1295, 1298-99 (9th Cir. 1981) (settlement in discrimination class action suit barred plaintiff's discrimination claim but did not bar his claim of retaliation for bringing the discrimination claim).

The arbitrator found that the Class Action did not preclude the grievance because the Class Action addressed the Company's alleged violations under the FCRA while the grievance addressed whether the Company violated the just cause standard established by the CBA. He also noted the settlement agreement in the Class Action did not address rights derived from a CBA.

In the grievance, the Union argued Hager's criminal conviction did not provide just cause for termination because: (1) the conviction for disturbing the peace was too minor to violate a work rule; and (2) the Company should not be allowed to reassess its decision to retain Hager after an administrative law judge recommended not revoking his driving certification because of the conviction. The FCRA was not an issue in the grievance. The question of whether a

termination was for just cause is based on a very different factual predicate than the question of whether the Company violated the FCRA for taking adverse action against employees and applicants based on consumer reports without first providing a copy of the report and a summary of FCRA rights. The person's rights under the CBA are unrelated to the person's rights under the FCRA. The fact that Hager's termination resulted from a consumer report obtained in violation of the FCRA is similar to the employee in <u>Dosier</u> suffering retaliation after bringing a discrimination claim. <u>Dosier</u>'s discrimination claim, and any FCRA violation claim Hager might wish to bring, could not be litigated subsequent to the class action settlements. But neither <u>Dosier</u>'s retaliation claim resulting from the discrimination claim, nor Hager's termination grievance resulting from the FCRA violation, should be barred because they do not result from the identical factual predicates as the underlying class action claims.

Accordingly, I find no error in the arbitrator's decision that the Class Action settlement did not preclude the grievance.

III.    <u>Laches</u>

The Company asks the court to apply laches and dismiss the Award because of the Union's unreasonable nearly four-year delay in selecting an arbitrator. The company claims prejudice from the delay because of the greatly-inflated back pay award, as well as excess costs in defending the late arbitration after already defending the same issue in the Class Action.

The Union argues the Company cannot establish any prejudice because it had the ability to move the arbitrator selection process forward at any time.

Laches is an equitable time limitation on a plaintiff's right to bring suit. Evergreen Safety Council v. RSA Network Inc., 697 F.3d 1221, 1226 (9th Cir. 2012). To prove laches, a defendant must prove plaintiff unreasonably delayed and prejudiced defendant. Id.

Based on the uncontroverted arbitration testimony that the parties routinely delayed selection of an arbitrator, I cannot conclude the Union's delay was unreasonable or even unusual. Moreover, the Company had the ability to start the arbitrator selection process whenever it wished to cap a possible back pay award. The Union did not unilaterally delay the arbitrator selection. Thus, I decline to dismiss the Award because of laches.

## CONCLUSION

First Student's Application to Vacate Decision and Arbitration Award [10] is denied.

IT IS SO ORDERED.

Dated this _____13th_____ day of November, 2013.


　　　_____/s/ Garr M. King_____
　　　Garr M. King
　　　United States District Judge

Page 10 - OPINION AND ORDER